# EXHIBIT 4

```
 1                 UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF VIRGINIA

 3                      Alexandria Division

 4

 5    - - - - - - - - - - - - - - - +
                                    |
 6    RUSSELL BRAMMER,              |
                                    |
 7            Plaintiff,            |
                                    | Civil Action No.
 8      vs.                         | 1:17-cv-01009-CMH-IDD
                                    |
 9    VIOLENT HUES PRODUCTIONS, LLC,|
                                    |
10            Defendant.            |
                                    |
11    - - - - - - - - - - - - - - - +

12                      Alexandria, Virginia

13                      Wednesday, April 4, 2018

14

15            Deposition of RUSSELL BRAMMER, a witness

16    herein, called for examination by counsel for

17    Defendant in the above-entitled matter, pursuant to

18    agreement, the witness being duly sworn by MICHELE E.

19    EDDY, RPR, CRR, a Notary Public in and for the

20    Commonwealth of Virginia, taken at the law offices of

21    Attorney Craig C. Reilly, 111 Oronoco Street,

22    Alexandria, Virginia, at 9:01 a.m.
```

| | | |
|---|---|---|
| 09:26:10 | 1 | that would be accurate.  We cite an objection, we |
| 09:26:14 | 2 | cite the federal rule, and we move on. |
| 09:26:17 | 3 | MR. WEIR:  Thank you, Your Honor. |
| 09:26:18 | 4 | That's all I have for you, and, again, sorry for |
| 09:26:21 | 5 | taking your time this morning. |
| 09:26:23 | 6 | JUDGE DAVIS:  No problem.  That's why I |
| 09:26:25 | 7 | get paid that exorbitant fee that I get paid as a |
| 09:26:30 | 8 | poor government employee. |
| 09:26:31 | 9 | MR. WEIR:  Thank you again for your |
| 09:26:33 | 10 | time, Your Honor.  Hopefully we don't have to |
| 09:26:35 | 11 | speak with you again today, as pleasant at it is. |
| 09:26:38 | 12 | JUDGE DAVIS:  Okay.  No problem. |
| 09:26:39 | 13 | MR. WEIR:  Take care. |
| 09:26:40 | 14 | JUDGE DAVIS:  All right. |
| 09:26:41 | 15 | (Telephone call ended.) |
| 09:26:52 | 16 | BY MR. WEIR: |
| 09:26:53 | 17 | Q    Okay, Mr. Brammer, is it your |
| 09:26:55 | 18 | recollection that you uploaded this photo to your |
| 09:26:58 | 19 | personal website prior to uploading it to the |
| 09:27:01 | 20 | Flickr site? |
| 09:27:02 | 21 | A    I don't remember. |
| 09:27:04 | 22 | Q    And with respect to -- I believe you |

09:27:06   1    also mentioned that you had uploaded it as well to

09:27:08   2    your Facebook page.  Is that correct?

09:27:12   3         A    Yes.

09:27:12   4         Q    Do you recall whether that was prior to

09:27:15   5    uploading it to Flickr or not?

09:27:17   6         A    I don't remember.

09:27:22   7         Q    Now, this photo in particular, had

09:27:24   8    you -- had you shown any -- had you made any

09:27:28   9    prints of it for anyone, had you sold any copies

09:27:31  10    of it, anything like that, prior to uploading it

09:27:33  11    to Flickr?

09:27:49  12         A    There was an instance, but I'm not sure

09:27:51  13    when it happened.  I don't know if it was prior or

09:27:55  14    after.

09:27:56  15         Q    Okay.  What were the -- was that a sale

09:27:58  16    of the photo?

09:27:59  17         A    Yes.  It was -- a copy of it was hanging

09:28:04  18    in my wife's office, and someone saw it and asked

09:28:07  19    about it.

09:28:08  20         Q    And your wife's office would be the

09:28:11  21    Stroga -- is that how it's pronounced? -- the

09:28:13  22    Stroga Yoga studios?

09:51:53   1              MR. DEAL:  At this point I am going to

09:51:54   2   object because if we're -- this is a photograph

09:51:58   3   that you generated when?  I mean, if we have a --

09:52:03   4   I think just more appropriate, if you're going to

09:52:06   5   ask the question I think you're going to ask, the

09:52:08   6   more appropriate one would be to use the post

09:52:10   7   included in the complaint.  My objection is going

09:52:14   8   to be on relevance to Defendant's Exhibit 1, it

09:52:21   9   being something that was generated, you know, this

09:52:23  10   morning or a week ago.

09:52:25  11              So my objection is that --

09:52:27  12              MR. WEIR:  Your objection --

09:52:28  13              MR. DEAL:  -- is that --

09:52:28  14              MR. WEIR:  Your objection is noted.

09:52:28  15   BY MR. WEIR:

09:52:29  16        Q    Mr. Brammer, do you see anything on this

09:52:31  17   photograph here indicating on the photograph

09:52:34  18   itself that the picture is copyrighted?

09:52:36  19        A    No.

09:52:37  20        Q    Do you see anything on the photograph

09:52:38  21   itself here indicating the title of the work?

09:52:43  22        A    On the photograph itself, no.

```
09:52:44   1      Q    On the photograph itself.

09:52:45   2      A    No.

09:52:46   3      Q    Do you see anything on the photograph

09:52:47   4   itself indicating that you are the author of the

09:52:50   5   photograph?

09:52:55   6      A    I mean, other than that -- my knowledge

09:52:57   7   of the photograph, no, there's nothing on the --

09:53:01   8   it's not signed, no.

09:53:05   9      Q    Is there anything on the photograph

09:53:06  10   itself here indicating the terms and conditions

09:53:09  11   for use of the photograph?

09:53:12  12      A    No.

09:53:14  13      Q    Is there any indication on the

09:53:15  14   photograph itself where such terms and conditions

09:53:18  15   may be found?

09:53:19  16      A    No.

09:53:21  17      Q    To the best of your recollection, has

09:53:23  18   this Adams Morgan at Night photograph ever

09:53:26  19   contained any of the information that we just

09:53:27  20   talked about?

09:53:33  21      A    I don't believe so.

09:53:34  22      Q    So if someone was to copy this picture
```

| | | |
|---|---|---|
| 09:56:03 | 1 | photograph to the Defendant's commercial website, |
| 09:56:06 | 2 | www.novafilmfest.com. |
| 09:56:11 | 3 | Did I read that correctly? |
| 09:56:12 | 4 | A    Yes. |
| 09:56:18 | 5 | Q    Then if we skip down to paragraph 12, it |
| 09:56:21 | 6 | reads, "On September 30, 2016, Plaintiff |
| 09:56:25 | 7 | registered the copyrighted photograph with the |
| 09:56:28 | 8 | United States Copyright Office and received the |
| 09:56:31 | 9 | registration number VA 2-056-245." |
| 09:56:39 | 10 | Did I read that correctly? |
| 09:56:41 | 11 | A    Yes. |
| 09:56:43 | 12 | Q    So do you agree with me that you filed |
| 09:56:45 | 13 | for the copyright registration for this photo |
| 09:56:48 | 14 | after the infringement began? |
| 09:56:53 | 15 | A    Yes. |
| 09:56:56 | 16 | Q    Did you file for your copyright after |
| 09:56:58 | 17 | you saw your photograph posted on the NOVA Film |
| 09:57:01 | 18 | Fest website? |
| 09:57:11 | 19 | A    I believe so.  I believe I did it -- |
| 09:57:16 | 20 | yes, I believe so. |
| 09:57:21 | 21 | Q    And so the -- seeing your photograph |
| 09:57:23 | 22 | posted on the NOVA Film Fest website was the |

11:06:02  1   say, "Usage fees broken down for six-month

11:06:06  2   period."

11:06:07  3          Do you see that?

11:06:08  4      A   Uh-hmm.

11:06:08  5      Q   If we go to the next page, you say,

11:06:13  6   "Quarter page for a rotating display."  Then in

11:06:18  7   parens you list the websites.  Then you have a

11:06:21  8   colon and then "$200 per image use."

11:06:24  9          Did I read that correctly?

11:06:25 10      A   Yes.

11:06:28 11      Q   So, essentially, what -- what you are

11:06:30 12   saying here is that the $200 that you had quoted

11:06:33 13   previously is for each specific website.  Right?

11:06:38 14      A   For a six-month period, yes.

11:06:40 15      Q   Right.

11:06:41 16          So to get the overall for all six

11:06:44 17   websites, you would just multiply that 200 by 6,

11:06:47 18   by the amount of uses?  Is that fair?

11:06:50 19      A   I believe that's a fair reading of it,

11:06:52 20   yes.

11:07:01 21      Q   And this six months that you are

11:07:03 22   referencing in the top part of page 4 of DX 10,

11:07:08   1   that is for the prior online usage of your photo,

11:07:14   2   prior to your reaching out to Ms. Haas.  Is that

11:07:16   3   fair?

11:07:20   4       A   I don't know if that's fair.  It says,

11:07:26   5   "That covers the online use you've already accrued

11:07:31   6   from my work," so, yes.

11:07:40   7       Q   So my -- I am correct that the $200 for

11:07:44   8   six months was referring to the prior unlicensed

11:07:46   9   use of your photos.  Right?

11:07:50   10      A   Yes.

11:07:58   11      Q   And then if you go to kind of after the

11:08:02   12  space, you say, "Per image breakdown as I've

11:08:05   13  identified they are being used."  You say, "Adams

11:08:09   14  Morgan at Night, $1,200 for six months or $1,500

11:08:13   15  for a year."

11:08:15   16          Am I right there that you're talking

11:08:16   17  about -- since you give six months or a year, that

11:08:18   18  you're talking about potential future licensing?

11:08:20   19  Is that fair?

11:08:21   20      A   Yes.

11:08:26   21      Q   Then the next down line you say -- after

11:08:28   22  the space, I'm sorry -- you say, "For the physical

```
11:21:12   1        A    Yes.

11:21:16   2        Q    So of the $1,250 for the Adams Morgan at

11:21:20   3   Night picture, did you -- did you attribute any

11:21:25   4   specific part of that to a single use on a single

11:21:28   5   website, for instance, the use on themelwood.com?

11:21:34   6        A    I don't believe so.

11:21:35   7        Q    So you never -- you never broke down

11:21:37   8   specifically what part of that 1,250 was for the

11:21:40   9   print versus website use or anything like that?

11:21:46  10        A    You mean as far as the 2,500?

11:21:49  11        Q    As far as the 1,250 for the Adams Morgan

11:21:53  12   at Night photograph.

11:21:54  13        A    Oh, I'm sorry, yes.  No, that wasn't

11:21:57  14   laid out specifically.

11:21:57  15        Q    So you couldn't -- sitting here today,

11:22:01  16   you couldn't tell me what part of that 1,250 you

11:22:03  17   could specifically attribute to a single website

11:22:05  18   use such as the use on themelwood.com?

11:22:08  19        A    No.

11:22:09  20        Q    But we agree that it is -- the 1,250

11:22:13  21   encompasses both the use of the print and the use

11:22:16  22   on six websites and potentially more.
```

| | | | |
|---|---|---|---|
| 11:22:20 | 1 | A | Yes. |
| 11:22:39 | 2 | Q | If we can go back to -- you can put the |
| 11:22:42 | 3 | | Bernstein stuff to the side. |
| 11:22:46 | 4 | | If we go back to DX 6, which is the |
| 11:22:50 | 5 | | Answers to Interrogatories that has the list of |
| 11:22:53 | 6 | | the various licenses on page 5. |
| 11:22:57 | 7 | | Are you with me? |
| 11:22:58 | 8 | A | Hold on. |
| 11:22:59 | 9 | Q | Yes. |
| 11:23:00 | 10 | A | DX 6, page 5, yes. |
| 11:23:06 | 11 | Q | You see after letter f, it says, |
| 11:23:07 | 12 | | "August 4, 2017, $750, Pixsy, license." |
| 11:23:15 | 13 | | Did I read that right? |
| 11:23:16 | 14 | A | Yes. |
| 11:23:16 | 15 | Q | We'll take a look at a few documents |
| 11:23:19 | 16 | | related to that license. |
| 11:23:36 | 17 | | (DX Exhibit 13 was marked for |
| 11:23:36 | 18 | | identification and attached to the deposition |
| 11:23:36 | 19 | | transcript.) |
| 11:23:36 | 20 | | BY MR. WEIR: |
| 11:23:39 | 21 | Q | Showing you a document I've marked as |
| 11:23:41 | 22 | | DX 13. |

14:17:32   1       A    It's accurate as far as what that means

14:17:34   2   to me, yes.

14:17:35   3       Q    And you have -- you have no reason to

14:17:37   4   believe that that is -- has somehow been

14:17:39   5   changed --

14:17:40   6       A    No.

14:17:41   7       Q    -- or is --

14:17:41   8       A    No.  Sorry.

14:18:06   9       Q    All right.  So if we go back to the

14:18:07  10   beginning of DX 22, I just want to quickly look at

14:18:11  11   the email at the top that's the July 17th -- I'm

14:18:14  12   sorry, July 13th, 2017, email from you to Pixsy.

14:18:17  13   Do you see that?

14:18:21  14       A    Yes.

14:18:22  15       Q    You write, "Hi, I wanted to update you

14:18:23  16   regarding the copyright status of this work.  The

14:18:26  17   registration has finally come through.  The number

14:18:27  18   is VA 2-056-245 effective September 30, 2016."

14:18:36  19            Did I read that correctly?

14:18:37  20       A    Yes.

14:18:37  21       Q    And so we can -- from this we can take

14:18:42  22   it that while you submitted your copyright on

14:18:44   1   November 30th, 2016, it came through maybe nine

14:18:49   2   months later, July 13th, 2017?

14:18:51   3      A    Yes.

14:18:51   4      Q    Okay.

14:19:02   5           THE WITNESS:  Can we take a short break?

14:19:03   6           MR. WEIR:  Yes, of course.

14:19:04   7           THE VIDEOGRAPHER:  We are going off

14:19:05   8   record at 14:19.

14:19:07   9           (A brief recess was taken.)

14:25:03  10           THE VIDEOGRAPHER:  We're on record at

14:25:04  11   14:25.

14:25:05  12           (DX Exhibit 23 was marked for

14:25:05  13   identification and attached to the deposition

14:25:05  14   transcript.)

14:25:06  15   BY MR. WEIR:

14:25:23  16      Q    Mr. Brammer, I'm handing you what I've

14:25:26  17   marked as DX 23.  It's an email chain.  The top

14:25:31  18   email is an email from Pixsy Case Management Team

14:25:33  19   to you dated September 9th, 2017.  Is that

14:25:37  20   correct?

14:25:40  21      A    September 9th?

14:25:41  22      Q    I'm sorry, September 8th, 2017.

14:48:56   1        A    Well, I mean, I recognize it because I

14:48:58   2    created it and also it says "SmugMug" at the top.

14:49:08   3        Q    So SmugMug, is that a similar site to

14:49:13   4    Flickr where a person can create an account and

14:49:15   5    upload their own photos to it?  Is that fair?

14:49:21   6        A    I mean, it is a place where you can

14:49:23   7    upload photos.  It's used differently than Flickr.

14:49:28   8    It's where I -- it's -- or at least I use it

14:49:32   9    differently.  It's where I sell prints to clients.

14:49:41   10   There's -- you know, so if a client -- I'll post

14:49:48   11   the gallery of their images on SmugMug, and they

14:49:52   12   can order prints off of it.

14:49:54   13       Q    Got it.  Okay.

14:49:57   14            Do you still use the SmugMug website?

14:50:02   15       A    Yes, occasionally, yes.  Well, yes, when

14:50:05   16   I post photos for clients, yes.

14:50:10   17       Q    And you will see that you have your

14:50:12   18   Adams Morgan at Night photo uploaded to your

14:50:15   19   SmugMug page.  Right?

14:50:17   20       A    Yes.  Yes, it's there.

14:50:20   21       Q    So you'll notice that there are -- there

14:50:22   22   are three pages in DX 28.  I'll represent to you

14:50:29  1    that the first two are screenshots from the

14:50:34  2    opening kind of what you go to when you type in

14:50:36  3    that address.  The third one is when you click

14:50:39  4    specifically on the Adams Morgan at Night photo.

14:50:41  5    So it's -- my understanding is it's a link on the

14:50:44  6    SmugMug page.  When you click it, this third page

14:50:47  7    is what it looks like when you click it.

14:50:50  8         A    Okay.

14:50:50  9         Q    Okay?

14:50:51  10             So on the opening SmugMug page -- that

14:50:55  11   would be what is represented on pages 1 and 2 of

14:50:58  12   DX 28 -- do you see any indication that the Adams

14:51:03  13   Morgan at Night photo or any other photos are

14:51:06  14   copyrighted?

14:51:15  15        A    No, on the first two pages, I don't see

14:51:18  16   anything.

14:51:18  17        Q    How about when you specifically click on

14:51:20  18   the Adams Morgan at Night photo, which is the

14:51:22  19   third page of DX 28, do you see any indication on

14:51:25  20   that page that would tell someone that the photo

14:51:27  21   was copyrighted?

14:51:32  22        A    No, other than the little "Russell

14:51:34   1    Brammer" at the bottom.   I'm not sure why that's

14:51:36   2    there.

14:51:36   3        Q    So there's no indication.

14:51:38   4        A    No, there's no copyright indication.

14:51:45   5        Q    You can put that one to the side.

14:51:48   6             If we can dig into your pile of

14:51:50   7    documents there for DX 4.   It is the complaint.

14:52:21   8        A    They're all out of order.

14:52:23   9        Q    That's all right.   I gave you a lot of

14:52:25  10    documents.

14:52:56  11        A    You said 4.   Right?

14:52:59  12        Q    4, correct.

14:53:19  13             There it is.

14:53:20  14        A    Yes, the complaint.

14:53:21  15        Q    So could you go to page 8 of the

14:53:26  16    complaint.

14:53:38  17             If we're in the right place, that should

14:53:40  18    be another screenshot of your Flickr page.   Right?

14:53:46  19        A    Yes.   Sorry, they're stuck together.

14:53:48  20        Q    So this is the screenshot of your Flickr

14:53:51  21    page.   This is the one that was attached to the

14:53:54  22    complaint that you filed in this case.   Correct?

14:53:57   1        A    Yes.

14:53:58   2        Q    If you turn to the next page, there's

14:54:00   3    page 9.  It says "Exhibit 3" at the top.  Are you

14:54:09   4    with me?  I think you had it.  It should be right

14:54:11   5    after the page we just looked at.

14:54:13   6        A    Oh, I'm sorry.

14:54:13   7        Q    This one (indicating).

14:54:14   8        A    Yes, got you.

14:54:18   9        Q    So that is the use on novafilmfest.com

14:54:22   10   that you allege in this case infringed upon your

14:54:25   11   copyright.  Correct?

14:54:26   12       A    Yes.

14:54:26   13       Q    You agree with me that the picture --

14:54:27   14   the version of the picture included here is not

14:54:33   15   100 percent of -- strike that.

14:54:36   16            You agree with me that the picture that

14:54:37   17   is here on page 9 of DX 4 is not the entirety of

14:54:41   18   the Adams Morgan at Night photo.  Correct?

14:54:44   19       A    Yes.

14:54:47   20       Q    Is it fair to say it's been cropped to

14:54:49   21   something about 50 percent of the size?  I know

14:54:52   22   you don't -- I'm not asking for scientific

14:54:55  1    certainty.

14:54:55  2        A    Yes, that's about -- somewhere around

14:54:58  3    there.

14:55:03  4        Q    If I could have you dig in the pile

14:55:06  5    again for DX 25.  Hopefully that one is not too

14:55:10  6    buried.

14:55:10  7        A    Do I need to keep 4 handy?

14:55:16  8        Q    I don't think so.

14:55:17  9        A    Okay.  25?

14:55:22 10        Q    Correct.

14:55:22 11        A    Found it right off.  Okay.

14:55:23 12        Q    And that is Plaintiff's Memorandum in

14:55:26 13    Opposition to Defendant's Motion to Dismiss

14:55:29 14    Plaintiff's complaint"?

14:55:30 15        A    Yes.

14:55:31 16        Q    Would you please turn again to page 9.

14:55:41 17             If you look at the second full

14:55:42 18    paragraph, the final sentence reads, "Brammer

14:55:46 19    posted the Copyrighted Photograph to his website,

14:55:50 20    along with many other photographs of his to

14:55:53 21    advertise his skills as a commercial

14:55:55 22    photographer."

14:55:56  1            Do you see that?

14:55:57  2       A    Yes.

14:55:57  3       Q    Is that true?

14:56:03  4       A    Among other things, yes.

14:56:04  5       Q    What other things are you referring to?

14:56:06  6       A    Well, in addition to commercial

14:56:07  7   photography.

14:56:10  8       Q    So the specific photograph was posted to

14:56:12  9   advertise your skills as a commercial

14:56:14  10  photographer.  Right?

14:56:16  11      A    Yes, that's fair to say.

14:56:19  12      Q    And then -- I just want to be clear.

14:56:20  13  And it was posted to your website for other

14:56:22  14  reasons as well?  Is that what you're saying?

14:56:24  15      A    No.  I'm saying that not all of the

14:56:28  16  photos that I posted are specifically about

14:56:31  17  commercial photography.

14:56:32  18      Q    But the -- so the specific photograph at

14:56:34  19  issue in this case, so when it says, "Brammer

14:56:37  20  posted the Copyrighted Photograph," capital C,

14:56:41  21  capital P, it's referring to the photograph at

14:56:46  22  issue in this case.

14:56:48   1              Do you understand that?

14:56:48   2       A    Yes.

14:56:49   3       Q    And it says, "Brammer posted the

14:56:49   4   Copyrighted Photograph to his website" -- and then

14:56:49   5   we can skip the "along with many other

14:56:49   6   photographs" point -- "to advertise his skills as

14:56:52   7   a commercial photographer."

14:56:54   8              That is true, correct?

14:57:01   9       A    I don't know -- I wouldn't say

14:57:02  10   necessarily specifically commercial photography

14:57:04  11   but just in general.

14:57:06  12       Q    So to advertise your skills as a

14:57:08  13   photographer.

14:57:10  14              MR. DEAL:  I'm going to object because

14:57:11  15   that's -- he's asked and answered you twice

14:57:14  16   already now.

14:57:14  17       Q    You can answer my question.

14:57:16  18       A    I have answered it.

14:57:18  19       Q    So would it be fair to say "Brammer

14:57:21  20   posted the copyrighted photograph to his website

14:57:23  21   to advertise his skills as a photographer"?

14:57:25  22              MR. DEAL:  Objection for the third time

14:57:27   1    for the same purposes.

14:57:28   2         Q    You can answer.

14:57:32   3         A    Yeah, in -- yes, and a subset of that

14:57:34   4    being commercial photography and -- yes.

14:57:42   5         Q    Okay.

14:57:42   6              So if we turn to the next page of this

14:57:44   7    document, which is page 10, do you see the last

14:57:54   8    paragraph, the second sentence starts, "Like most

14:57:59   9    commercial photographers, Brammer earns the bulk

14:58:02   10   of his income in three ways:  (1) charging clients

14:58:06   11   for his expertise and skill in capturing original

14:58:09   12   images.  This includes a 'creative fee,' which

14:58:14   13   covers only the image capture while performing a

14:58:17   14   specific task for a client."

14:58:19   15             Did I read that correctly?

14:58:20   16        A    Uh-hmm.

14:58:21   17        Q    So is it fair --

14:58:23   18        A    Yes.  Thank you.

14:58:23   19        Q    Is it fair to read that as describing a

14:58:27   20   situation where a client hires you to take

14:58:31   21   specific photographs for a specific event or a

14:58:36   22   specific type of shoot or something to that

15:02:19  1    third party's use of the Adams Morgan at Night

15:02:22  2    photograph?

15:02:26  3        A    No, I don't think so.

15:02:27  4        Q    Do you have -- strike that.

15:02:33  5             Do you publicly offer licenses for

15:02:37  6    third-party use for the Adams Morgan at Night

15:02:40  7    photograph anywhere, your website or otherwise?

15:02:42  8        A    No, I don't think so.

15:02:46  9        Q    Does the RussellBrammer.com website

15:02:49  10   offer to sell physical prints of the Adams Morgan

15:02:54  11   at Night website?

15:02:56  12       A    Not at the moment, no.

15:02:58  13       Q    Did it at some point?

15:03:00  14       A    I believe it did.

15:03:02  15       Q    Do you recall when that changed?

15:03:05  16       A    When it changed?  No, I don't remember.

15:03:09  17   I don't know.

15:03:14  18       Q    Is there anywhere else, either on your

15:03:17  19   website or anywhere on the Internet or any gallery

15:03:20  20   or anything like that, where you do offer prints

15:03:23  21   of the Adams Morgan at Night photograph for sale

15:03:26  22   to the public?

15:03:30  1      A    No, not that I can think of.  Maybe you

15:03:33  2   could get it on the SmugMug page, but I don't

15:03:38  3   think so.  I'm not sure.

15:03:41  4      Q    Apart from potentially on the SmugMug

15:03:43  5   page, you can't think of any other places where

15:03:45  6   it's for sale to a third party?

15:03:48  7      A    No, I don't think so.

15:03:52  8      Q    So if a third party wanted to purchase a

15:03:55  9   print of the photograph or purchase a license to

15:03:59 10   use the photograph, they would have to

15:04:01 11   specifically find you and reach out to you in

15:04:04 12   order to do that.  Right?

15:04:07 13      A    Yes, I believe that's accurate.

15:04:17 14            MR. WEIR:  Why don't we take a short

15:04:18 15   break.  I think that's everything I have, but I

15:04:20 16   just want to go over my documents.

15:04:24 17            THE WITNESS:  Sure.

15:04:25 18            THE VIDEOGRAPHER:  Going off record,

15:04:26 19   15:04.

15:04:30 20            (A brief recess was taken.)

15:15:48 21            THE VIDEOGRAPHER:  On the record at

15:15:49 22   15:15.