# EXHIBIT 5

```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF VIRGINIA

 3                      Alexandria Division

 4

 5    - - - - - - - - - - - - - - - +
                                    |
 6    RUSSELL BRAMMER,              |
                                    |
 7            Plaintiff,            |
                                    |  Civil Action No.
 8      vs.                         |  1:17-cv-01009-CMH-IDD
                                    |
 9    VIOLENT HUES PRODUCTIONS, LLC,|
                                    |
10            Defendant.            |
                                    |
11    - - - - - - - - - - - - - - - +

12                         Alexandria, Virginia

13                         Wednesday, April 4, 2018

14

15            Deposition of RUSSELL BRAMMER, a witness

16    herein, called for examination by counsel for

17    Defendant in the above-entitled matter, pursuant to

18    agreement, the witness being duly sworn by MICHELE E.

19    EDDY, RPR, CRR, a Notary Public in and for the

20    Commonwealth of Virginia, taken at the law offices of

21    Attorney Craig C. Reilly, 111 Oronoco Street,

22    Alexandria, Virginia, at 9:01 a.m.
```

10:49:16   1        A     Yes.

10:49:16   2        Q     -- at the most?   Okay.

10:49:17   3              Do you recall what you talked about with

10:49:18   4    Ms. Haas on that phone call?

10:49:23   5        A     Yeah.   I informed her that they had been

10:49:29   6    using my photo.   She apologized and said that they

10:49:33   7    were in the wrong and asked me to let her know

10:49:40   8    where it was being used.   I don't remember if that

10:49:49   9    was when she asked for a license or for -- I don't

10:49:58  10    remember if that was that conversation or if it

10:50:01  11    was in an email, but that was the gist of it.

10:50:05  12        Q     Okay.   And then your follow-up here then

10:50:07  13    is -- is laying out the specific places where you

10:50:11  14    had found that her company had used the photo.

10:50:15  15    Correct?

10:50:15  16        A     Yes.

10:50:21  17        Q     How did you -- how did you find these

10:50:24  18    potentially infringing uses of your photo?

10:50:29  19        A     I don't remember if -- I don't remember.

10:50:35  20        Q     Did you find it through Pixsy?   Were you

10:50:38  21    using Pixsy at that time?

10:50:40  22              MR. DEAL:   Objection.   It's been asked

| | | | |
|---|---|---|---|
| 11:09:28 | 1 | A | Wait, $1,800? |
| 11:09:29 | 2 | Q | So there was -- the six websites had |

11:09:31   3   used Adams Morgan at Night, and one had also used

11:09:34   4   your other photo, which was the Adams Morgan at

11:09:36   5   Sunset, I believe.  You can read through the whole

11:09:40   6   email if it makes it more clear.  I'm probably

11:09:43   7   jumping around too much, which is why I'm causing

11:09:46   8   trouble.

11:09:56   9       A    I see $1,200 for six months plus $200

11:10:06   10   for the Sunset photo plus the $600 makes $2,000.

11:10:12   11       Q    Makes the 2,000.

11:10:13   12       A    Yes.

11:10:13   13       Q    That's what I was trying to do, is get a

11:10:16   14   breakdown of how we got to that $2,000.

11:10:18   15           So the prior usage of your photos you

11:10:21   16   offered for $2,000.  And then the next line, where

11:10:23   17   it says, "Plus," you say $1,400 for the next six

11:10:27   18   months of use on the web, or if they want to use

11:10:29   19   it on the web for another year, it's 1,750.

11:10:31   20   Right?

11:10:33   21       A    Yes, that's what it says.

11:10:37   22       Q    So of the $2,000 for the past usage,

| 11:10:41 | 1 | $800 of that is attributable to Bernstein's use of |

11:10:41   1   $800 of that is attributable to Bernstein's use of

11:10:45   2   the Adams Morgan at Night photo, right?  So $1,200

11:10:50   3   for web use and then the $600 for the print.

11:10:53   4        A    Yes.

11:10:56   5        Q    And then the licensing going forward of

11:11:00   6   the $1,400 for the next six months, $1,200 of that

11:11:05   7   would be for Adams Morgan at Night and then $200

11:11:08   8   for the Sunset photo.  Right?

11:11:10   9        A    Yes, I believe that's accurate.

11:11:12   10       Q    And of the 1,750 for the next year, it

11:11:16   11  would be 1,500 for Adams Morgan at Night and 250

11:11:20   12  for the Sunset photo.  Right?

11:11:22   13       A    Yes.

11:11:24   14       Q    So based on your totals to Ms. Haas, if

11:11:36   15  Bernstein wanted to use the photos -- all the

11:11:39   16  photos for a year -- actually, I'll do this

11:11:43   17  differently.  Strike that.

11:11:45   18            So if we take the $1,800 for past usage

11:11:49   19  for Adams Morgan at Night and add that to the

11:11:51   20  $1,500 for the next year of web use, that would be

11:11:57   21  $3,300.  Right?

11:12:01   22       A    I'm sorry, say that again.

| | | | |
|---|---|---|---|
| 11:12:03 | 1 | Q | Sorry.  No, it's my fault.  I should be |
| 11:12:06 | 2 | more clear. | |
| 11:12:07 | 3 | | So if we take -- I just want to talk |
| 11:12:10 | 4 | about the numbers attributable to the Adams Morgan | |
| 11:12:12 | 5 | at Night photo, which is why I think it's kind of | |
| 11:12:15 | 6 | hard to pull it out of the totals.  So of the | |
| 11:12:17 | 7 | prior usage, we agree that $1,800 of that was for | |
| 11:12:20 | 8 | the Adams Morgan at Night.  Correct? | |
| 11:12:24 | 9 | A | Yeah, 1,200, yeah. |
| 11:12:27 | 10 | Q | And then if we go down to the 1,750 for |
| 11:12:29 | 11 | the next year, 1,500 of that is attributable to | |
| 11:12:33 | 12 | the usage of Adams Morgan at Night.  Right? | |
| 11:12:36 | 13 | A | Yes. |
| 11:12:37 | 14 | Q | So your -- essentially your offer to |
| 11:12:40 | 15 | Bernstein for payment for prior usage as well as | |
| 11:12:43 | 16 | payment for another year of usage would be a total | |
| 11:12:48 | 17 | of $3,300 for the Adams Morgan at Night photo | |
| 11:12:50 | 18 | specifically.  Right? | |
| 11:13:03 | 19 | A | Yeah.  I'm going to -- yeah, without |
| 11:13:07 | 20 | getting a calculator out, yeah. | |
| 11:13:10 | 21 | Q | I could give you one if you want, but |
| 11:13:12 | 22 | it's 1,500 plus 1,800? | |

| | | | |
|---|---|---|---|
| 11:13:15 | 1 | A | I don't think you're trying to trick me. |
| 11:13:24 | 2 | Q | You essentially close your email by |
| 11:13:25 | 3 | | saying to Ms. Haas, let me know what the next |
| 11:13:29 | 4 | | steps you want to take.  I can send you an invoice |
| 11:13:32 | 5 | | if you want.  Is that -- I know I'm not saying it |
| 11:13:34 | 6 | | word for word, but that's essentially your |
| 11:13:36 | 7 | | closing.  Right? |
| 11:13:37 | 8 | A | Yes. |
| 11:13:43 | 9 | Q | Now, if you go to the email from |
| 11:13:45 | 10 | | Ms. Haas that comes on Tuesday, April 5th, at |
| 11:13:52 | 11 | | 1:12 p.m., she writes, "Russell" -- whoops, she |
| 11:13:56 | 12 | | doesn't say your name, I'm sorry.  Strike that. |
| 11:13:59 | 13 | | Ms. Haas' email to you Tuesday, April |
| 11:14:01 | 14 | | 5th, at 1:12 p.m., says, "Thank you so much for |
| 11:14:05 | 15 | | the email.  What we propose is we will pay you a |
| 11:14:08 | 16 | | one-time payment of $2,500 to use the two images |
| 11:14:12 | 17 | | on our websites as well as the printed image |
| 11:14:16 | 18 | | inside the building and no time restriction of |
| 11:14:19 | 19 | | use." |
| 11:14:19 | 20 | | Do you see that? |
| 11:14:20 | 21 | A | Yes. |
| 11:14:24 | 22 | Q | She then says, "If this doesn't sound |

| | | |
|---|---|---|
| 11:14:27 | 1 | agreeable, we are more than willing to remove the |
| 11:14:29 | 2 | images from our Internet listings now that you |
| 11:14:31 | 3 | have alerted us, as well as the print.  Again, we |
| 11:14:34 | 4 | apologize and hope you accept our counteroffer |
| 11:14:38 | 5 | acceptable." |
| 11:14:42 | 6 | A    That's what it says. |
| 11:14:44 | 7 | Q    So, essentially, what Ms. Haas is saying |
| 11:14:47 | 8 | here is that for a one-time payment of $2,500, |
| 11:14:49 | 9 | they want to settle up any of the prior unlicensed |
| 11:14:55 | 10 | usage and be able to use your photos going forward |
| 11:14:58 | 11 | on their websites -- |
| 11:14:59 | 12 | A    Correct. |
| 11:14:59 | 13 | Q    -- as well as the print -- |
| 11:15:00 | 14 | A    Yes. |
| 11:15:00 | 15 | Q    -- in The Melwood building.  Right? |
| 11:15:02 | 16 | A    Yes. |
| 11:15:13 | 17 | Q    Would you -- would you consider this to |
| 11:15:15 | 18 | be a settlement with Ms. Haas for the prior use of |
| 11:15:18 | 19 | your -- prior unlicensed use of your photo? |
| 11:15:21 | 20 | A    Yes. |
| 11:15:25 | 21 | Q    And you ultimately accepted Ms. Haas' |
| 11:15:28 | 22 | counteroffer.  Right?  That's your email on the |

11:27:54  1   website was using the Adams Morgan at Night photo

11:27:57  2   which is the same photo at issue in this case.

11:27:59  3   Right?

11:28:00  4        A    Yes.

11:28:01  5        Q    And then Barbara writes in the next

11:28:03  6   paragraph -- I'm skipping to the third sentence.

11:28:04  7   She writes, "The above license fee should

11:28:07  8   therefore be considered a starting point for

11:28:09  9   negotiations, and you will receive confirmation of

11:28:12  10  your royalties once the license fee has been

11:28:15  11  paid."

11:28:16  12            Did I read that correctly?

11:28:17  13       A    Yes.

11:28:18  14       Q    And so fair to say that what Barbara is

11:28:22  15  saying here is this is essentially Pixsy's initial

11:28:25  16  offer to Spot Hype.  It may not ultimately come

11:28:29  17  out at 750, but that's where the negotiations are

11:28:32  18  starting.  Is that fair?

11:28:33  19       A    That would be a fair way to read that, I

11:28:34  20  think.

11:28:37  21       Q    Would you consider these to be a

11:28:38  22  settlement negotiation between Pixsy working on

11:28:41   1   your behalf and spothype.com?

11:28:49   2        A    Yes.

11:29:00   3        Q    One quick thing.

11:29:01   4             So the second page of this, looks like

11:29:05   5   pretty soon after you get this email from Pixsy,

11:29:06   6   you forward it on to Laura Cassil, I believe is

11:29:11   7   how you pronounce her last name.  That's your

11:29:13   8   wife.  Right?

11:29:14   9        A    Yes, that's my wife.

11:29:15  10        Q    What was your rationale for forwarding

11:29:16  11   it on to her?

11:29:21  12        A    I like to keep her updated on things

11:29:25  13   that are happening in my life.  She's my wife.

11:29:29  14        Q    So just to keep her in the loop of what

11:29:30  15   was going on.

11:29:32  16        A    Yes.

11:29:41  17             MR. DEAL:  Let me take a break for just

11:29:42  18   one second.

11:29:42  19             MR. WEIR:  Okay.

11:29:44  20             THE VIDEOGRAPHER:  We are going off

11:29:44  21   record at 11:29.

11:29:47  22             (A brief recess was taken.)

| | | |
|---|---|---|
| 11:37:36 | 1 | THE VIDEOGRAPHER:  We are on record at |
| 11:37:37 | 2 | 11:37. |
| 11:37:39 | 3 | (DX Exhibit 14 was marked for |
| 11:37:39 | 4 | identification and attached to the deposition |
| 11:37:39 | 5 | transcript.) |
| 11:37:39 | 6 | BY MR. WEIR: |
| 11:37:52 | 7 | Q    I'm handing you a document that I have |
| 11:37:54 | 8 | marked as DX 14.  And this is a follow-up email |
| 11:38:06 | 9 | from the Pixsy Case Management Team on August 3rd, |
| 11:38:10 | 10 | 2017.  Correct? |
| 11:38:16 | 11 | A    Yes. |
| 11:38:16 | 12 | Q    It is following up on the prior |
| 11:38:18 | 13 | communication where they had told you that they |
| 11:38:20 | 14 | had reached out to Spot Hype LLC, and now they are |
| 11:38:23 | 15 | informing you that Spot Hype LLC had paid for the |
| 11:38:26 | 16 | use of the photo.  Correct? |
| 11:38:29 | 17 | A    Yes. |
| 11:38:31 | 18 | Q    It says that "The royalty you have |
| 11:38:33 | 19 | earned from this case is $375."  Is that correct? |
| 11:38:43 | 20 | A    Yes. |
| 11:38:43 | 21 | Q    Based on your agreement with Pixsy, is |
| 11:38:45 | 22 | that 50 percent of what Spot Hype paid? |

11:38:48  1       A    Yes.

11:38:52  2       Q    Do you know what the details were of any

11:38:54  3   license that was granted to Spot Hype?

11:38:59  4       A    I don't think so.

11:39:02  5       Q    Do you know whether a license was

11:39:04  6   granted at all or whether this was just settling

11:39:06  7   up for prior unlicensed use?

11:39:10  8       A    I don't know.

11:39:15  9       Q    Were you included or privy to any

11:39:17  10  back-and-forth negotiations or discussions between

11:39:19  11  Pixsy and Spot Hype that ultimately resulted in

11:39:24  12  the settlement that is reflected in this email?

11:39:27  13      A    I don't believe so.

11:39:31  14      Q    So you wouldn't know whether there was

11:39:32  15  any back-and-forth negotiations or anything of the

11:39:34  16  like?

11:39:35  17      A    I don't know.

11:39:37  18      Q    But you aren't aware of them

11:39:38  19  specifically.  Correct?

11:39:39  20      A    I'm not aware of any, yes.

11:39:49  21      Q    And you aren't aware of whether Pixsy

11:39:51  22  granted Spot Hype a going-forward license for any